**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | |
|---|---|
| **JEREMEY COPAS**<br>c/o Peterson Law LLP<br>545 Metro Place South<br>Suite 435<br>Dublin, OH 43017<br><br>Plaintiff,<br><br>-vs-<br><br>**DALLAS BALDWIN, in his official capacity**<br>**Franklin County Sheriff**<br>373 South High Street<br>Columbus, Ohio 43215<br><br>and<br><br>**CRAIG SPRANG, individually**<br>c/o Franklin County Sheriff's Office<br>373 South High Street<br>Columbus, Ohio 43215<br><br>Defendants. | Case No. ___________________<br><br>Judge ____________________<br><br>**COMPLAINT**<br>**AND JURY DEMAND** |

**COMPLAINT FOR DISABILITY DISCRIMINATION, FAILURE TO ACCOMMODATE, RETALIATION, AND OTHER RELIEF**

Plaintiff Jeremey Copas ("Plaintiff" or "Copas"), by and through undersigned counsel, for his Verified Complaint against Defendant Dallas Baldwin, in his official capacity as Franklin County Sheriff ("Sheriff Baldwin" or the "Sheriff"), and Defendant Craig Sprang, individually ("Sprang") (collectively, "Defendants"), states as follows:

**PARTIES, JURISDICTION, AND VENUE**

1. Plaintiff Jeremey Copas is an individual residing in Howard, Ohio. At all relevant times, Copas was employed as a Deputy Sheriff by the Franklin County Sheriff's Office.

2. Defendant Dallas Baldwin is the elected Sheriff of Franklin County, Ohio. He is sued solely in his official capacity as the appointing authority and employer responsible for the terms, conditions,

assignments, discipline, compensation, and privileges of employment of Franklin County deputy sheriffs.

3. The Franklin County Sheriff, acting through the Franklin County Sheriff's Office, is an "employer" within the meaning of R.C. 4112.01(A)(2) and 42 U.S.C. § 12111(5).

4. Defendant Craig Sprang was, at all relevant times, a sergeant and supervisor in the Sheriff's canine unit. Sprang is a "person" within the meaning of R.C. 4112.01(A)(1) and is subject to the anti-retaliation provisions of R.C. 4112.02(I). Sprang is sued individually only with respect to the Ohio-law retaliation claim; no federal ADA claim is asserted against him individually.

5. This Court has original subject-matter jurisdiction under 28 U.S.C. § 1331 because Counts IV through VI arise under the Americans with Disabilities Act of 1990, as amended ("ADA"), 42 U.S.C. §§ 12101 et seq., including 42 U.S.C. §§ 12112 and 12203. This Court has supplemental jurisdiction under 28 U.S.C. § 1367(a) over Counts I through III because the Ohio-law claims form part of the same case or controversy as the federal claims.

6. Venue is proper in the Southern District of Ohio, Eastern Division, under 28 U.S.C. § 1391(b) and 42 U.S.C. § 2000e-5(f)(3), incorporated into the ADA by 42 U.S.C. § 12117(a), because Defendants reside in or maintain their principal offices in this District, Copas was employed in this District, and the conduct giving rise to this action occurred in Franklin County, Ohio.

## GENERAL ALLEGATIONS

7. Copas began working for the Franklin County Sheriff's Office on July 21, 1997, as a Deputy Sheriff assigned to the Corrections Division.

8. In February 2004, Copas transferred to the Patrol Division. In September 2004, he transferred to third-shift patrol, where he remained until December 2012.

9. In December 2012, based upon his seniority, Copas received a canine-unit midwatch assignment.

10. Copas served with three canine partners and, in 2019, completed an official trainer course qualifying him to train police canines.

11. In 2021, based upon his seniority, Copas received a first-shift canine position with Thursday, Friday, and Saturday as his regular days off.
12. Copas had performed successfully in the canine unit for years and had not received a comparable poor performance evaluation during his prior approximately twenty-six years of service.
13. After Sprang entered the canine unit as a sergeant in or about 2021, Sprang began subjecting Copas to heightened scrutiny and discipline for conduct that was customary or tolerated for other unit members.
14. In or about 2022, then-Sergeant Raymond Debolt also entered the unit and participated in adverse treatment of Copas, including unfavorable assignments, write-ups that Copas disputed as fabricated, and an unusually negative performance evaluation.
15. Copas filed grievances concerning the discipline and the negative evaluation and requested an internal-affairs investigation into Debolt's conduct. Several charges against him were later dropped before pre-disciplinary proceedings, and no performance evaluation was completed for Copas in 2024.
16. In April 2024, Copas underwent gallbladder surgery and was absent from work for approximately six weeks.
17. During that period, Copas's canine partner became seriously ill and was placed on a medication regimen. After Copas returned to work, the canine experienced training problems, including difficulty detecting explosives and tracking.
18. Copas obtained a second veterinary opinion in late December 2024 or early January 2025. The second veterinarian believed the medication was impairing the canine's sense of smell and contributing to unnecessary weight gain, and recommended a different food and probiotic regimen that could take up to two months to become effective.
19. In May 2024, Debolt left the canine unit after being promoted to lieutenant and assigned to Corrections. Unlike the customary practice when a handler leaves the unit, the Sheriff allowed

Debolt to retain his canine in active service and continued paying canine compensation, veterinary expenses, food, and training costs.

20. In July 2024, Copas transferred to a 7:00 p.m. to 4:00 a.m. canine position because of the position's days off: Friday, Saturday, and Sunday.

21. The unit required Copas to attend daytime canine training after working his overnight schedule. The abrupt shift changes prevented Copas from obtaining adequate sleep and created a serious health and safety concern.

22. On one training day, Copas worked until 4:00 a.m., became tied up on a run, and then had to obtain repairs to his assigned vehicle at the county garage. He remained on duty, notified Sprang that he would leave at approximately 1:00 p.m., and spoke with Sprang twice before leaving.

23. Sprang did not object during those conversations but later charged Copas with being absent without leave. Although Copas had never previously received an AWOL charge during his lengthy tenure and other employees received lesser discipline for first offenses, Copas received a one-day suspension and lost four hours of pay.

24. Other canine-unit members were permitted to work varied training hours for legitimate reasons, and the unit did not maintain a uniform training schedule.

25. Copas informed Captain Edward Schillig that the abrupt transition from his overnight work schedule to early daytime training prevented him from sleeping and was affecting his health.

26. In response, the Sheriff adjusted Copas's training schedule to 12:00 p.m. to 9:00 p.m. beginning in approximately November 2024. That modified schedule provided a break from his regular 7:00 p.m. to 4:00 a.m. work hours and enabled Copas to continue performing his canine duties.

27. The modified schedule remained in place until approximately February 2025 and demonstrated that a modified training schedule was workable and did not impose an undue hardship.

28. In February 2025, the Sheriff advised Copas that training would return to 8:00 a.m. to 5:00 p.m., that he would work second-shift hours the preceding day, and that he had to report to the training site by 8:00 a.m. without the drive time historically provided.

29. The proposed schedule would repeatedly rotate Copas from third shift to second shift to first shift and then back to third shift every other week.

30. Copas provided a physician's note requesting temporary relief from the rotating schedule until his physician could fully evaluate him. The Sheriff disregarded the request and instead sent Copas an ADA accommodation form to be completed.

31. At Copas's next appointment in February 2025, his physician completed the requested form and provided medical restrictions concerning the schedule and overtime.

32. Copas asked Human Resources Director David Masterson about the status of the accommodation request. Masterson advised that a decision would be forthcoming within days.

33. On March 7, 2025, Masterson informed Copas that the Sheriff had determined that Copas could not perform the essential functions of his canine position.

34. The March 7 decision also barred Copas from voluntary overtime based upon Masterson's interpretation of the physician's restrictions, even though the Sheriff continued to reserve the right to hold Copas over for mandatory overtime when the Sheriff deemed it necessary.

35. The Sheriff did not conduct a timely, individualized, good-faith interactive process before concluding that Copas could not perform the essential functions of the canine position with a reasonable accommodation.

36. The Sheriff did not adequately consider continuing the successful 12:00 p.m. to 9:00 p.m. training schedule, providing another modified training schedule, or any other effective accommodation that would have allowed Copas to remain in the canine unit.

37. On March 17, 2025, Chief Michael Flynn issued a transfer letter directing Copas to return to the Franklin County Corrections Center II at 2460 Jackson Pike.

38. The transfer involuntarily removed Copas from the canine unit and caused him to lose substantial compensation and benefits associated with the position, including shift differential, one hour of canine compensation per workday, a guaranteed take-home vehicle, field-training-officer pay, and substantial overtime opportunities associated with an explosives canine.

39. For approximately thirteen years before the transfer, Copas regularly earned approximately $70,000 to $90,000 per year above his base salary from these forms of compensation and overtime, with a temporary reduction during the COVID-19 period.

40. Copas immediately bid on an available patrol position. The patrol position used substantially the same 8:00 p.m. to 4:00 a.m. hours that Copas had worked in the canine unit.

41. After Copas supplied an additional physician letter reiterating the information in the accommodation paperwork, Masterson stated that he was "reluctantly" awarding Copas the patrol position.

42. Copas later bid on and received a third-shift detective-bureau position with 8:00 p.m. to 4:00 a.m. hours without any further interactive process. He subsequently received a first-shift detective position based upon his seniority.

43. The Sheriff's ability to place Copas in patrol and detective positions with the same or similar hours demonstrates that Copas remained qualified to perform law-enforcement duties and that the asserted inability to perform the essential functions of the canine position was not based on an individualized assessment of his actual capabilities.

44. On or about March 10, 2025, Copas filed a charge of disability discrimination and retaliation with the Ohio Civil Rights Commission ("OCRC"), identified as OCRC Charge No. COLB1(013282)03102025 and EEOC Charge No. 22A-2025-02202.

45. The Sheriff and Sprang learned of Copas's discrimination charge shortly after it was filed.

46. On March 17, 2025, only days after the Sheriff learned of the charge, Sprang drafted an interoffice communication accusing Copas of abusing his canine partner during Copas's final training day on March 5, 2025.

47. Copas denies abusing his canine partner. The accusation was delayed until after the discrimination charge and was an additional effort to discredit Copas, interfere with his ability to retire or retain his canine partner, and retaliate against him for seeking an accommodation and filing a charge.

48. After Copas was removed, the canine unit was transferred to Support Services under newly promoted Captain Debolt. Unit members' days off and hours were changed, and the position from which Copas had been removed was reposted with different hours.

49. Copas, as the most senior applicant, bid on the reposted canine position. The Sheriff proposed allowing him only to "try out" for the position, even though Copas had previously held it based upon seniority and there was then no contention that his medical condition prevented him from performing the position's essential functions.

50. Defendants' stated reasons for removing Copas from the canine unit were inconsistent with their prior successful accommodation, their later placement of him in positions with the same or similar hours, and their willingness to consider him again for the canine position.

51. As a direct and proximate result of Defendants' conduct, Copas has suffered and continues to suffer lost wages, lost overtime, lost benefits, lost employment opportunities, humiliation, inconvenience, emotional distress, and other compensatory damages.

## ADMINISTRATIVE EXHAUSTION

52. Copas timely filed his charge with the OCRC and EEOC regarding the discriminatory and retaliatory practices alleged in this Complaint.

53. The OCRC determined that all jurisdictional requirements for the charge had been satisfied.

54. On June 4, 2026, the OCRC entered a Letter of Determination recording a "withdrawal of charge after a finding of probable cause - request a notice of right to sue."

55. On June 4, 2026, the OCRC issued and mailed Copas a Notice of Right to Sue authorizing him to file a civil action under R.C. Chapter 4112.

56. A true and accurate copy of the OCRC Notice of Right to Sue is attached as **Exhibit A**. A true and accurate copy of the OCRC Letter of Determination is attached as **Exhibit B**.

57. Copas has satisfied the conditions precedent in R.C. 4112.051 and 4112.052, and his Ohio-law claims are timely filed.

58. On August 17, 2026, the United States Equal Employment Opportunity Commission ("EEOC") issued a Notice of Right to Sue concerning EEOC Charge No. 22A-2025-02202.

59. The EEOC Notice states that more than 180 days had passed since the filing of the charge and that the EEOC was terminating its processing of the charge.

60. A true and accurate copy of the EEOC Notice of Right to Sue is attached as **Exhibit C**.

61. Copas has satisfied all conditions precedent to bringing his ADA claims, and this action is filed within 90 days of his receipt of the EEOC Notice of Right to Sue.

## COUNT I
## DISABILITY DISCRIMINATION - OHIO LAW
**(Against Defendant Sheriff Baldwin in His Official Capacity)**

62. Copas incorporates the preceding paragraphs as though fully restated herein.

63. R.C. 4112.02(A) prohibits an employer from discriminating against a person because of disability with respect to tenure, terms, conditions, privileges, or any matter directly or indirectly related to employment.

64. At all relevant times, Copas had a physical or mental impairment affecting sleep and his ability to tolerate rapid, repeated shift changes, had a record of such impairment, and/or was regarded by the Sheriff as having such an impairment.

65. Copas was otherwise qualified to perform the essential functions of his canine position, with or without reasonable accommodation.

66. The Sheriff subjected Copas to materially adverse employment actions because of his actual, recorded, and/or perceived disability, including restricting voluntary overtime, determining without an adequate individualized assessment that he could not perform the canine position, involuntarily transferring him to Corrections, removing him from the canine unit, and causing the loss of substantial compensation and benefits.

67. The Sheriff's stated reasons were pretextual, inconsistent, and not honestly held, as shown by the successful prior schedule modification, Copas's placement in patrol and detective positions with the same or similar hours, and the Sheriff's later willingness to consider Copas for the reposted canine position.

68. The Sheriff's conduct constitutes unlawful disability discrimination in violation of R.C. 4112.02(A), enforceable through R.C. 4112.052.

69. As a direct and proximate result, Copas has suffered and continues to suffer the damages described above.

**COUNT II**
**FAILURE TO PROVIDE REASONABLE ACCOMMODATION - OHIO LAW**
**(Against Defendant Sheriff Baldwin in His Official Capacity)**

70. Copas incorporates the preceding paragraphs as though fully restated herein.

71. The Sheriff knew of Copas's medical condition and limitations through Copas's reports, physician note, and completed accommodation paperwork.

72. Copas requested a reasonable, temporary modification of the canine training schedule so that he would not be required to cycle abruptly among first, second, and third shifts without adequate time for sleep.

73. A modified schedule was reasonable and effective. The Sheriff had already used a 12:00 p.m. to 9:00 p.m. training schedule from approximately November 2024 through February 2025, and that arrangement enabled Copas to continue performing his duties.

74. Ohio Adm.Code 4112-5-08(E) requires an employer to provide reasonable accommodation absent undue hardship and recognizes job restructuring and modified work schedules as forms of accommodation.

75. The Sheriff failed to participate in a timely and good-faith interactive process, failed to identify or evaluate effective accommodations, and removed Copas from the canine unit rather than continuing or implementing a reasonable schedule modification.

76. The Sheriff has not demonstrated that the requested accommodation would have imposed an undue hardship or prevented Copas from safely and substantially performing the essential functions of the canine position.

77. The Sheriff's failure to reasonably accommodate Copas constitutes disability discrimination in violation of R.C. 4112.02(A), R.C. 4112.052, and Ohio Adm.Code 4112-5-08(E).

78. As a direct and proximate result, Copas has suffered and continues to suffer the damages described above.

**COUNT III**
**RETALIATION - OHIO LAW**
**(Against All Defendants)**

79. Copas incorporates the preceding paragraphs as though fully restated herein.

80. R.C. 4112.02(I) prohibits any person from discriminating in any manner against another person because that person opposed an unlawful discriminatory practice or made, assisted, or participated in a charge, investigation, proceeding, or hearing under R.C. Chapter 4112.

81. Copas engaged in protected activity by opposing disability-based restrictions and his removal from the canine unit, objecting to what he reasonably believed to be disability discrimination and a failure to accommodate, and filing his OCRC/EEOC charge.

82. Defendants knew of Copas's protected activity.

83. After and because of that protected activity, Defendants subjected Copas to materially adverse actions, including removing him from the canine unit, transferring him to Corrections, restricting

overtime, causing the loss of compensation and benefits, accusing him of abusing his canine partner shortly after learning of the charge, interfering with the retirement or retention of his canine partner, and requiring him to try out for a position he had previously held by seniority.

84. Sprang's delayed March 17, 2025 accusation, made only days after Defendants learned of the discrimination charge, supports a causal connection between Copas's protected activity and the retaliatory conduct.

85. The close temporal proximity, shifting explanations, disparate treatment, and inconsistencies in Defendants' asserted reasons demonstrate retaliatory motive and pretext.

86. Defendants' conduct constitutes unlawful retaliation in violation of R.C. 4112.02(I), enforceable through R.C. 4112.052.

87. As a direct and proximate result, Copas has suffered and continues to suffer the damages described above.

## COUNT IV
## DISABILITY DISCRIMINATION - ADA
**(Against Defendant Sheriff Baldwin in His Official Capacity)**

88. Copas incorporates the preceding paragraphs as though fully restated herein.

89. The ADA prohibits a covered employer from discriminating against a qualified individual on the basis of disability with respect to compensation, terms, conditions, and privileges of employment. 42 U.S.C. § 12112(a).

90. The Sheriff is a covered employer within the meaning of 42 U.S.C. § 12111(5), and Copas was an employee and a qualified individual within the meaning of the ADA.

91. At all relevant times, Copas had an actual disability and/or a record of disability within the meaning of 42 U.S.C. § 12102(1), including an impairment that substantially limited the major life activity of sleeping, and/or the Sheriff regarded Copas as having an impairment within the meaning of the ADA.

92. Copas was qualified to perform the essential functions of his canine position, with or without reasonable accommodation.

93. The Sheriff discriminated against Copas on the basis of disability by, among other things, restricting voluntary overtime, determining without an adequate individualized assessment that he could not perform the canine position, involuntarily transferring him to Corrections, removing him from the canine unit, and causing the loss of substantial compensation and benefits.

94. The Sheriff's stated reasons for these actions were pretextual, inconsistent, and not honestly held, as shown by the successful prior schedule modification, Copas's placement in patrol and detective positions with the same or similar hours, and the Sheriff's later willingness to consider Copas for the reposted canine position.

95. The Sheriff's conduct constitutes unlawful disability discrimination in violation of the ADA, including 42 U.S.C. § 12112(a).

96. As a direct and proximate result, Copas has suffered and continues to suffer the damages described above.

**COUNT V**
**FAILURE TO PROVIDE REASONABLE ACCOMMODATION - ADA**
**(Against Defendant Sheriff Baldwin in His Official Capacity)**

97. Copas incorporates the preceding paragraphs as though fully restated herein.

98. The Sheriff knew of Copas's actual disability and medical limitations through Copas's reports, physician note, completed ADA accommodation paperwork, and subsequent physician correspondence.

99. Copas requested a reasonable, temporary modification of the canine training schedule so that he would not be required to cycle abruptly among first, second, and third shifts without adequate time for sleep.

100. The requested schedule modification was reasonable and effective. The Sheriff had already used a 12:00 p.m. to 9:00 p.m. training schedule from approximately November 2024 through February 2025, and that arrangement enabled Copas to continue performing his duties.

101. Under 42 U.S.C. § 12112(b)(5)(A), unlawful discrimination includes failing to make reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability unless the employer can demonstrate undue hardship.

102. The Sheriff failed to participate in a timely and good-faith interactive process, failed to identify or evaluate effective accommodations, and removed Copas from the canine unit rather than continuing or implementing a reasonable schedule modification.

103. The requested accommodation would not have imposed an undue hardship and would have allowed Copas to continue safely and substantially performing the essential functions of the canine position.

104. The Sheriff's failure to reasonably accommodate Copas constitutes unlawful disability discrimination in violation of the ADA, including 42 U.S.C. § 12112(b)(5)(A).

105. As a direct and proximate result, Copas has suffered and continues to suffer the damages described above.

## COUNT VI
## RETALIATION - ADA
## (Against Defendant Sheriff Baldwin in His Official Capacity)

106. Copas incorporates the preceding paragraphs as though fully restated herein.

107. The ADA prohibits discrimination against an individual because that individual opposed an act or practice made unlawful by the ADA or made a charge, testified, assisted, or participated in an investigation, proceeding, or hearing under the ADA. 42 U.S.C. § 12203(a).

108. Copas engaged in protected activity by requesting a disability accommodation in good faith, opposing what he reasonably believed to be disability discrimination and a failure to

accommodate, providing medical documentation in support of his accommodation request, and filing his OCRC/EEOC charge.

109. The Sheriff, through his supervisory and human-resources personnel, knew of Copas's protected activity.

110. After and because of that protected activity, the Sheriff subjected Copas to materially adverse actions, including removing him from the canine unit, transferring him to Corrections, restricting overtime, causing the loss of compensation and benefits, permitting or adopting a delayed accusation that Copas had abused his canine partner shortly after the charge was filed, interfering with the retirement or retention of his canine partner, and requiring him to try out for a position he had previously held by seniority.

111. Sprang's delayed March 17, 2025 accusation, made in his supervisory capacity only days after the Sheriff learned of the discrimination charge, supports a causal connection between Copas's protected activity and the retaliatory conduct.

112. The close temporal proximity, shifting explanations, disparate treatment, and inconsistencies in the Sheriff's asserted reasons demonstrate retaliatory motive and pretext.

113. The Sheriff's conduct constitutes unlawful retaliation in violation of 42 U.S.C. § 12203(a), and as a direct and proximate result Copas has suffered and continues to suffer the damages described above.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Jeremey Copas requests judgment in his favor and against Defendants and an Order granting the following relief:

A. A declaration that Defendant Sheriff Baldwin violated the ADA and that Defendants violated R.C. Chapter 4112, as alleged above;

B. An award of back pay and lost compensation, including lost salary, shift differential, canine compensation, overtime, field-training-officer pay, take-home-vehicle value, and other lost wages and benefits, together with prejudgment interest;

C. Reinstatement to the canine position or a substantially equivalent position with restored seniority, compensation, benefits, and privileges, or front pay in lieu of reinstatement;

D. Expungement from Copas's personnel and disciplinary records of the unlawful discipline, disability-based restrictions, and retaliatory accusations described in this Complaint;

E. An injunction requiring the Sheriff to provide a reasonable accommodation, to refrain from disability discrimination and retaliation, and to restore Copas to the position he would have occupied absent the unlawful practices;

F. Compensatory damages for emotional distress, humiliation, inconvenience, loss of enjoyment of life, and other noneconomic harm, to the extent recoverable under the ADA and Ohio law, in an amount to be determined at trial;

G. Court costs, reasonable attorney fees under 42 U.S.C. § 12205 and to the extent otherwise permitted by law, and other litigation expenses;

H. Prejudgment and post-judgment interest as provided by law; and

I. Any other legal or equitable relief the Court deems just and appropriate.

**PETERSON LAW LLP**

/s/ Gregory S. Peterson
GREGORY S. PETERSON (0061915)
545 Metro Place South, Suite 435
Dublin, Ohio 43017
Telephone: 614.365.7000
Facsimile: 614.220.0197
E-mail: gpeterson@peterson-llp.com
*Counsel for Plaintiff Jeremey Copas*

**JURY DEMAND**

Plaintiff demands a trial by jury on all claims and issues so triable.

/s/ Gregory S. Peterson
GREGORY S. PETERSON (0061915)